IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR O. FISCHER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-44 |
| | ) | |
| JOSEPH MCCORMICK | ) | Judge Nora Barry Fischer |
| CONSTRUCTION COMPANY, INC., | ) | Magistrate Judge Susan Baxter |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

The instant action involves an allegation that an employer unlawfully declined to rehire one of its former employees because he was suffering from prostate cancer. The Defendant has filed a motion for summary judgment, and United States Magistrate Judge Susan Baxter has recommended that the motion be granted. Docket Nos. 35 & 45. Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff has filed written objections to Judge Baxter's report and recommendation. Docket No. 48. For the reasons that follow, the Defendant's motion for summary judgment will be granted.

**II.    Background**

The Joseph McCormick Construction Company, Inc. ("McCormick Construction"), is in the business of constructing roads through the production and administration of asphalt. Docket Nos. 37 & 41 at ¶ 1. The work performed by McCormick Construction is seasonal in nature. *Id.* at ¶ 2. Most members of McCormick Construction's workforce are typically laid off in November. *Id.* at ¶ 3. The employees are normally called back to work in March or April. *Id.* at ¶ 4. At all times relevant to this case, Owen McCormick ("McCormick") served as the President

1

of McCormick Construction and the Chairman of its Board of Directors. *Id.* at ¶¶ 5-6. He was responsible for making personnel decisions. *Id.* at ¶ 7. Robert B. Gwinn ("Gwinn") was McCormick Construction's Vice President of Operations. *Id.* at ¶ 9. Joseph T. Hosey ("Hosey") worked as a project manager for McCormick Construction. *Id.* at ¶ 10.

In 2004, Arthur O. Fischer, Jr. ("Fischer"), started to work as McCormick Construction's General Superintendent. Docket Nos. 37 & 41 at ¶ 11. During the winter break commencing in November 2011, Fischer learned that he needed to undergo a surgical procedure designed to alleviate the effects of prostate cancer. *Id.* at ¶ 13. The operation was scheduled for March 15, 2012. *Id.* Fischer informed Gwinn of the impending surgical procedure on February 15, 2012. *Id.* at ¶¶ 12-13. While speaking with Gwinn, Fischer suggested that he would be ready to return to work at the beginning of the construction season. *Id.* at ¶ 16. Gwinn later told McCormick that Fischer was preparing to undergo a medical procedure. *Id.* Fischer remained in contact with Gwinn about work-related matters. *Id.* at ¶ 19. Gwinn informed Fischer of job orders that had been received for the upcoming year. *Id.* at ¶ 20.

On March 1, 2012, Gwinn received an update about the status of Fischer's health. Docket Nos. 37 & 41 at ¶ 22. Gwinn told Fischer that construction projects would be starting around the middle of March, and that McCormick Construction would be ready for him when he was medically able to return. *Id.* at ¶ 23. During a conversation with Gwinn conducted on March 19, 2012, Fischer advised that his surgery had been delayed by roughly ten days, but that he would most likely be able to return to work on April 9, 2012. *Id.* at ¶ 24. Gwinn made no inquiries as to whether Fischer would be under medical restrictions upon his return. *Id.* at ¶ 25.

McCormick Construction's annual preseason meeting was scheduled for March 30, 2012. Docket Nos. 37 & 41 at ¶ 26. Gwinn contacted Fischer to determine whether he would be able

to attend the meeting. *Id.* Fischer stated that he would not be able to attend because of an inability to drive on that date. *Id.* In the meantime, McCormick Construction continued to treat Fischer as if he were coming back to work for the next construction season. *Id.* at ¶ 36.

During the early part of April 2012, McCormick decided not to rehire Fischer. ECF Nos. 37 & 41 at ¶ 72. Gwinn communicated McCormick's decision to Fischer during a meeting held on April 9, 2012. *Id.* at ¶ 92. Fischer was told that he was not being rehired because several of McCormick Construction's foremen had complained about his management style and threatened to leave the company if he was retained. Docket No. 38-2 at 19. McCormick Construction did not replace Fischer with a new General Superintendent. ECF Nos. 37 & 41 at ¶ 73. Instead, Fischer's prior duties and responsibilities were assumed by McCormick Construction's foremen and project managers. *Id.* at ¶ 74.

Fischer later filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that McCormick Construction had unlawfully declined to rehire him because of his age and disability. Docket No. 1 at ¶ 19. On November 27, 2012, the EEOC provided Fischer with written notice of his right to sue McCormick Construction within ninety days. Docket No. 1-1. Fischer commenced this action against McCormick Construction on February 11, 2013, asserting claims under the Age Discrimination in Employment Act of 1967 ("ADEA") [29 U.S.C. § 621 *et seq.*] and the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. § 12101 *et seq.*]. He amended his complaint on July 8, 2013, and added parallel discrimination claims under the Pennsylvania Human Relations Act ("PHRA") [43 PA. STAT. § 951 *et seq.*]. Docket No. 20. On August 9, 2013, Fischer filed a motion to withdraw the claims premised on a theory of age-based discrimination. Docket No. 26. Judge Baxter granted that motion on September 12, 2013. Docket No. 30.

On February 21, 2014, McCormick Construction filed a motion for summary judgment. Docket No. 35. In a report and recommendation dated July 23, 2014, Judge Baxter advised that the motion should be granted. Docket No. 45. Fischer filed written objections to the report and recommendation on August 4, 2014. Docket No. 48. The parties advanced their respective positions during the course of an oral argument session conducted on September 17, 2014. Docket Nos. 50 & 51. McCormick Construction's motion for summary judgment is now ripe for disposition.

### III. Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the Court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the evidence, the Court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Township*, 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's

4

burden of proof. *Celotex Corp.*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. *Id.* at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## IV. Jurisdiction and Venue

The Court has jurisdiction over Fischer's ADA claim pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction over his remaining PHRA claim is predicated on 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b).

## V. Discussion

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The PHRA declares it to be an "unlawful discriminatory practice" for a covered employer "to refuse to hire or employ or contract with [an individual], or to bar or to discharge [an individual] from employment," because of his or her "non-job related handicap or disability." 43 PA. STAT. § 955(a).

5

Since this is an employment discrimination case in which no "direct evidence" of discrimination is presented, the Supreme Court's analyses in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), provide the formulation for allocating the requisite burdens of proof and production for purposes of the pending motion for summary judgment.[1] In an employment discrimination case of this kind, the plaintiff must establish a *prima facie* case of illegal discrimination. *McDonnell Douglas*, 411 U.S. at 802. If a *prima facie* case of discrimination is established, the defendant must articulate a legitimate, nondiscriminatory reason for treating the plaintiff in an adverse manner. *Id.* at 802-803. If the defendant articulates a legitimate, nondiscriminatory reason for the plaintiff's adverse treatment, the plaintiff must demonstrate that the reason given by the defendant for such treatment is merely a pretext for unlawful discrimination. *Id.* at 804-805. Evidence suggesting that an employer's explanation for an adverse employment action is unworthy of credence constitutes a form of circumstantial evidence that a plaintiff can use to establish that the action was taken for a discriminatory reason. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).

The plaintiff's burden of establishing a *prima facie* case of disparate treatment is not onerous. *Burdine*, 450 U.S. at 253. In order to establish a *prima facie* case of discrimination, the plaintiff need only show that: (1) he or she was a member of a statutorily-protected class; (2) he or she was aggrieved by an adverse employment action; and (3) the adverse employment action

---

[1] The *McDonnell Douglas-Burdine* burden-shifting framework does not apply in an employment discrimination case in which "direct evidence" of discrimination is presented. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "Direct evidence" of discrimination is evidence that is "so revealing of discriminatory animus that it is not necessary to rely on any presumption" from the plaintiff's *prima facie* case to shift the applicable burden of production to the defendant. *Starceski v. Westinghouse Electric Corp.*, 54 F.3d 1089, 1096, n. 4 (3d Cir. 1995). The evidence presented by Fischer does not constitute "direct evidence" of discrimination.

occurred under circumstances giving rise to an inference of illegal discrimination. *Shah v. Bank of America*, 598 F.Supp.2d 596, 604 (D.Del. 2009). The specific elements of a *prima facie* case generally "depend on the facts of the particular case" before the court and "cannot be established on a one-size-fits-all basis." *Jones v. School District of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999). The *prima facie* inquiry "remains flexible and must be tailored to fit the specific context in which it is applied." *Sarullo v. United States Postal Service*, 352 F.3d 789, 797-798 (3d Cir. 2003). Because the *prima facie* inquiry in any case is fact-specific, "[t]he touchstone of the inquiry is whether the circumstances giving rise to an inference of discrimination are of *evidentiary value*, not whether they fit into a mechanical formula." *Cobetto v. Wyeth Pharmaceuticals*, 619 F.Supp.2d 142, 153, n. 3 (W.D.Pa. 2007)(emphasis in original), citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). A *prima facie* case "raises an inference of discrimination" sufficient to shift the burden of production to the defendant. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). This inference is based on an assumption that certain actions, if left unexplained, "are more likely than not based on the consideration of impermissible factors." *Id.*

If the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to rebut the presumption of discrimination through the introduction of admissible evidence indicating that the challenged employment action was taken for a legitimate, nondiscriminatory reason. *Burdine*, 450 U.S. at 254-255. To sustain this burden, the defendant does not have to persuade the court that it was "actually motivated" by the proffered reason. *Id.* at 254. The inquiry as to whether the defendant has met its burden of production "can involve no credibility assessment," since "the burden-of-production determination necessarily *precedes* the

7

credibility-assessment stage." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)(emphasis in original). The defendant satisfies its burden of production, and rebuts the plaintiff's *prima facie* showing of discrimination, simply by introducing admissible evidence that, *if taken as true*, would *permit* a finding that the challenged employment action was taken for a legitimate, nondiscriminatory reason. *Mitchell v. Miller*, 884 F.Supp.2d 334, 370 (W.D.Pa. 2012).

If the defendant meets its burden of production, the factual dispute is framed with "sufficient clarity" to provide the plaintiff with "a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 255-256. In order to establish that the defendant is liable for illegal employment discrimination, the plaintiff must ultimately convince the trier of fact that a discriminatory animus was the *real reason* for the adverse employment action at issue. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Liability cannot be premised on a jury's mere *disbelief* of the defendant's explanation for an adverse employment action, but rather upon the jury's *affirmative belief* of the plaintiff's contention that the action was taken on the basis of an impermissible discriminatory criterion. *St. Mary's Honor Center*, 509 U.S. at 519 ("It is not enough, in other words, to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.")(emphasis in original). Nonetheless, evidence discrediting the defendant's proffered reason for the adverse action, when coupled with the plaintiff's *prima facie* case, may sufficiently undermine the employer's credibility to enable a reasonable trier of fact to conclude that illegal discrimination has occurred. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Evidence used to establish a *prima facie* case of discrimination may also be relied upon to demonstrate pretext, since nothing about the *McDonnell Douglas-Burdine* burden-shifting

framework requires a court to ration the evidence presented in a particular case among the *prima facie* and pretext stages of the analysis. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008). Proof that an employer's explanation for an adverse employment action is unworthy of credence can be a powerful form of circumstantial evidence that is probative of intentional discrimination. *Reeves*, 530 U.S. at 147. Circumstantial evidence is not only sufficient to sustain a finding of liability for intentional discrimination, "but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace*, 539 U.S. at 100, quoting *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 508, n. 17, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). Depending on the circumstances of the particular case, a plaintiff can sometimes prevail on the basis of circumstantial evidence without introducing "additional, independent evidence of discrimination." *Reeves*, 530 U.S. at 149. Whether summary judgment is warranted in a given case depends upon the strength of the plaintiff's *prima facie* case, the probative value of the evidence discrediting the defendant's proffered reason for the challenged employment action, and the presence or absence of additional evidence that may properly be considered by a court in determining whether a judgment as a matter of law is appropriate. *Id.* at 148-149.

The ADA Amendments Act of 2008 broadened the category of individuals entitled to statutory protection under the ADA by expanding the definition of the term "disability." Pub. L. No. 110-325, § 4; 122 Stat. 3553, 3555-3557 (2008). An individual is "disabled" within the meaning of the ADA if he or she suffers from "a physical or mental impairment that substantially limits one or more [or his or her] major life activities." 42 U.S.C. § 12102(1)(A). A person who is "regarded as having such an impairment" similarly qualifies for statutory protection. 42 U.S.C. § 12102(1)(C). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action

9

prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Judge Baxter correctly recognized that, where a plaintiff invokes the statutory language extending protection to those who are "regarded as" having an impairment, "causation is now an integral part of the threshold finding of whether [he or she] has a disability for purposes of establishing a *prima facie* case of discrimination under the ADA." Docket No. 45 at 8.

An employer cannot discriminate against an individual "on the basis of disability" without *knowing* that he or she is "disabled." *Geraci v. Moody-Tottrup, International, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996). On February 15, 2012, Gwinn learned that Fischer was suffering from prostate cancer. Docket Nos. 37 & 41 at ¶ 13. McCormick testified that he had never learned the nature of Fischer's condition prior to making the personnel decision challenged in this case. Docket No. 38-1 at 33. Nonetheless, Gwinn testified that he had told McCormick that Fischer had cancer. Docket No. 38-3 at 9. Because Fischer is the nonmoving party, the conflict in the testimonial evidence must be resolved in his favor at the present stage. *Thompson v. Wagner*, 631 F.Supp.2d 664, 681-682 (W.D.Pa. 2008).

Judge Baxter concluded that the period of time elapsing between February 15, 2012, and April 9, 2012, was too long to give rise to an inference that Fischer's prostate cancer played a role in McCormick's decision. Docket No. 45 at 10-11. The Court cannot accept that conclusion for two reasons. First, McCormick's decision was made less than two weeks after Fischer had missed the meeting held on March 30, 2012. Docket No. Docket Nos. 37 & 41 at ¶ 72. Fischer missed the meeting precisely because he was recovering from surgery. *Id.* at ¶ 26. Second, McCormick learned of Fischer's condition before the beginning of the 2012

construction season. The decision not to rehire Fischer was communicated to him on the very day that he was planning to return to work. *Id.* at ¶¶ 24, 92. Given that McCormick Construction's seasonal operations had not yet commenced when Fischer's impairment was disclosed to McCormick, the delay between that disclosure and the challenged personnel decision does not necessarily negate the inference of causation that would otherwise arise under the surrounding circumstances. *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).

Under the applicable framework, it is relatively easy for a plaintiff to establish a *prima facie* case of discrimination. *Scheidemantle v. Slippery Rock University State System of Higher Education*, 470 F.3d 535, 539 (3d Cir. 2006). For the foregoing reasons, the context of McCormick's decision not to rehire Fischer could give rise to a reasonable inference that the decision was made because of Fischer's "disability." Therefore, McCormick Construction must "rebut the [resulting] presumption of discrimination through the introduction of admissible evidence indicating that the challenged employment action was taken for legitimate, nondiscriminatory reasons." *Toth v. California University of Pennsylvania*, 844 F.Supp.2d 611, 637 (W.D.Pa. 2012).

McCormick Construction has presented testimonial evidence suggesting that Gwinn and Hosey, while meeting with McCormick during the first week of April 2012, recommended that Fischer not be rehired. Docket No. 38-1 at 24-27. Hosey testified that, during the meeting, he had told McCormick that the company did not need a General Superintendent. Docket No. 38-4 at 6. It is undisputed that Fischer was never replaced. Docket Nos. 37 & 41 at ¶¶ 73-74. In both deposition testimony and a subsequent affidavit, Gwinn stated that three of McCormick Construction's foremen had voiced complaints about Fischer's management style. Docket No.

11

38-3 at 6-15; Docket No. 38-5 at ¶¶ 2-21. The three foremen were identified as Todd Dropik ("Dropik"), Bruce Wise ("Wise"), and John Adams ("Adams"). *Id.* According to Gwinn, Dropik and Wise had expressed their unwillingness to work with Fischer prior to the 2012 construction season. Docket No. 38-5 at ¶¶ 3, 12. Gwinn further declared that Fischer's "negative attitude" had prompted Adams to look for another job. *Id.* at ¶¶ 16-19. Wise apparently "confronted" Gwinn about Fischer during the meeting conducted on March 30, 2012. *Id.* at ¶ 20. Gwinn conveyed the foremen's complaints to McCormick during the April 2012 meeting. Docket No. 38-1 at 26. McCormick testified that he had declined to rehire Fischer in order to avoid a "mutiny" among the foremen. *Id.* at 26-27.

The testimony given by McCormick, Gwinn and Hosey is "legally sufficient to justify a judgment" for McCormick Construction. *Burdine*, 450 U.S. at 255. The factual issue is now framed with "sufficient clarity" to give Fischer "a full and fair opportunity to demonstrate pretext." *Id.* at 255-256. In order to defeat McCormick Construction's motion for summary judgment, Fischer must point to evidence permitting a reasonable trier of fact to conclude that he was not rehired *because of* his "disability." *Reeves*, 530 U.S. at 146 (remarking that "[t]he ultimate question is whether the employer intentionally discriminated"). Such a conclusion could come either directly from evidence that is indicative of a discriminatory animus or indirectly from evidence suggesting that McCormick Construction's proffered reasons for not rehiring Fischer are unworthy of credence. *Prise v. Alderwoods Group, Inc.*, 657 F.Supp.2d 564, 595 (W.D.Pa. 2009).

Fischer points to nothing in the record which suggests that McCormick, Gwinn or Hosey harbored animosity against individuals who were suffering from "disabling" medical impairments. Instead, Fischer maintains that there are some minor factual inconsistencies in the

12

details discussed by the three witnesses. Docket No. 53 at 10-16. For example, McCormick testified that he had feared that Fischer's return would cause a "mutiny" among the foremen, causing several of them to look for other jobs. Docket No. 38-1 at 26. Fischer accuses McCormick of overstating the seriousness of the matter, since only three foremen had voiced complaints to Gwinn. Docket No. 53 at 12-14. Inconsistencies of the kind described by Fischer, however, do not create a genuine issue of material fact for trial. Fischer does not call the Court's attention to evidence which contradicts the "core facts" put forth by McCormick Construction. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006). Since Fischer neither deposed the foremen himself nor sought to impeach the credibility of the testimony given by McCormick, Gwinn and Hosey through the introduction of contradictory evidence, that testimony justifies the entry of summary judgment in favor of McCormick Construction. *Lauren W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007)("The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness.").

"The provisions of the PHRA are typically construed to be coterminous with parallel federal anti-discrimination provisions unless a difference in the applicable statutory language indicates that a different construction is warranted." *Howard v. Blalock Electric*, 742 F.Supp.2d 681, 688 (W.D.Pa. 2010). Judge Baxter correctly noted that the category of "disabled" individuals protected under the PHRA may be smaller than the category of "disabled" individuals protected under the ADA, since the PHRA was not amended to incorporate the changes made by the ADA Amendments Act. Docket No. 45 at 11-12. The Court need not reach that issue, since no reasonable jury could conclude that Fischer was not rehired because of his "disability" even if it is assumed that he fell within the category of persons enjoying statutory

13

protection under the PHRA. *Johnson v. McGraw-Hill Companies*, 451 F.Supp.2d 681, 692 (W.D.Pa. 2006)(explaining that an analysis claims arising under the ADA would also be dispositive of claims arising under the PHRA).

**VI.**     **Conclusion**

For the foregoing reasons, the motion for summary judgment filed by McCormick Construction (*Docket No. 35*) will be granted. Fischer's objections to the report and recommendation will be overruled to the extent that they are inconsistent with this opinion. An appropriate order will follow.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:    November 3, 2014

cc:    The Honorable Susan Paradise Baxter
       Unite States Magistrate Judge

       All counsel of record